UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 15 CR 350 |
| v. ) | |
| ) | Judge John J. Tharp Jr. |
| ANDREW SHELTON, et al., ) | |
| ) | |

**NOTICE OF INTENT TO PRESENT DIRECT EVIDENCE OF CRIME CHARGED AND NOTICE OF INTENT TO ADMIT EVIDENCE PURSUANT TO FRE 404(b)**

The UNITED STATES OF AMERICA, by and through its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, hereby respectfully provides notice of its intent to admit direct evidence relating to defendants' theft of approximately 104 Ruger firearms from a cargo train in Chicago, and defendant Andrew Shelton's possession of a firearm on June 9, 2015. The United States also provides notice of its intent to introduce evidence of other acts committed by the pursuant to Federal Rule of Evidence 404(b) and moves this Court for a pretrial ruling authorizing the admission that evidence.

**BACKGROUND AND CHARGED CONDUCT**

On April 12, 2015, a crew of eight men banded together to steal items from the cargo trains in Chicago. A cargo train containing 318 firearms from the Ruger factory in New Hampshire, which were enroute to Spokane, Washington, pulled into a rail yard in Chicago. The men worked together that evening to steal approximately 104 of the firearms. In addition to stealing the firearms, the men also stole a shipment of women's Calvin Klein shoes. Over the next few days, the defendants worked

1

together to sell as many of the stolen firearms as possible before their ultimate arrest by law enforcement.

The defendants were all charged with a combination of charges including possession of a firearm by a prohibited person, in violation of Title 18, United States Code, Section 922(g), possession of a stolen firearm, in violation of Title 18, United States Code, Section 922(j), and cargo theft, in violation of Title 18, United States Code, Section 659.

I.     **Introduction of Direct Evidence of the Charged Crimes.**

The United States seeks to introduce evidence at trial regarding four events that occurred either shortly before or shortly after the day of the charged theft. The United States submits that the evidence related to these four events is direct evidence of the charged crimes in this matter. The four events are (1) the post-theft sales of the stolen firearms by the defendants, (2) the recovery of 33 stolen Ruger firearms in the Chicagoland area, (3) the Facebook postings by Defendant Patrick Edwards one week prior to the theft and the day after the theft, and (4) the storing of firearms at a family member's residence by defendant Andrew Shelton. For the reasons stated below, the United States believes this evidence to be direct evidence of the crimes charged.

1. **Testimony and Evidence Regarding the Sales of the Stolen Firearms Is Admissible as Direct Evidence of the Crimes Charged.**[1]

The government intends to elicit testimony and present evidence regarding three specific sales of the stolen Ruger firearms which occurred in the days after the theft. The United States submits that the defendants' sales of the stolen firearms within days of the theft bears directly on the defendant's involvement in the theft for which they are charged, as well as their prohibited possession of the firearms, and their knowing possession of stolen firearms. The United States seeks to present evidence regarding three sales of the stolen firearms by defendants Patrick Edwards, Terry Walker, and Frederick Lewis.

   a. **Defendant Patrick Edwards' Sale of Three Firearms in April 2015.**

The government anticipates presenting evidence of Patrick Edwards' sale of three of the stolen Ruger firearms within days of the theft. The United States anticipates presenting this evidence through the testimony of a witness who brokered the firearms sale transaction for Edwards, Malik Ashby, as well as evidence of phone records and Facebook messages which corroborate Ashby's testimony.

   i. **Testimony of Malik Ashby**

Malik Ashby, who has testified before the grand jury in this investigation, is expected to testify that he received a call from defendant Edwards on April 13, 2015, the day after the theft. Ashby will testify that Edwards asked Ashby if he knew

---

[1] For the reasons stated below, the United States believes this evidence is direct evidence of the charged crimes. To the extent the Court finds otherwise, the United States provides notice under FRE 404(b) that it intends to introduce this evidence as other crimes evidence for non-propensity purposes.

anyone who wanted to purchase firearms. Ashby knew Edwards stole items from the cargo trains and Ashby had purchased stolen items from Edwards in the past. During the call, Edwards told Ashby he had approximately 11 firearms for sale and he later sent Ashby a photograph of one of the firearms.[2]

Ashby will testify that he was able to find a buyer for two of the firearms and brokered the transaction for Edwards. Ashby will testify that he was present for the sale of the firearms by Edwards and observed the buyer pay Edwards $600 for the two firearms which he described as .22 caliber Chargers. Edwards paid Ashby $50 for brokering the sale of the firearms.

Ashby will also testify that he purchased one of the stolen firearms directly from Edwards. Ashby paid Edwards $300 for a .22 caliber Charger. This sale also occurred in April 2015, within days of the theft. Ashby attempted to broker additional firearm sales for Edwards but was unable to find additional buyers.

    ii.  **Telephone Records and Firearms Photograph**

Ashby's testimony regarding his communications with Edwards and the brokering of the firearms sales is corroborated by the telephone records, including cell site data. Ashby told law enforcement that Edwards contacted him at his place of employment, Good Dog Inc., regarding whether he knew anyone who wanted to purchase firearms. A search of Edwards' phone records shows multiple calls to the number associated with Good Dog Inc. on April 13, 2015, the day after the offense. Additionally, cell site records for Edwards' phone puts his cell phone in the area of

---

[2] This photograph was recovered from Ashby's Facebook account and the identical photograph was recovered from Edwards' cell phone at the time of his arrest.

Good Dog Inc. on April 13, 2015, which is consistent with Ashby's assertion that he purchased one of the firearms from Edwards that day after receiving the call from Edwards.

### b. Sale of Firearms by Defendant Terry Walker

In addition to the firearms sales by Edwards, the United States also seeks to introduce evidence of firearm sales by defendant Terry Walker. This evidence will be introduced through the testimony of cooperating defendant Marcel Turner. Marcel Turner will testify at trial that in April 2015, shortly after the firearms theft, he received a call from defendant Walker requesting Turner's assistance in selling some of the stolen firearms to another individual. Turner will testify that Walker described the individual as "someone's Aunt."[3] Turner will testify that he retrieved three of the stolen firearms from Walker and brought them to a woman at a parking lot in Chicago. Turner will testify that he received approximately $900-1,000 from the woman which he brought back to Walker and received $150 payment from Walker for brokering this transaction.

In addition to the testimony of Turner, law enforcement will introduce telephone records which demonstrate telephone calls between Turner and Lori Shelton on April 14, 2015. These are the only calls to that number appearing on Turner's phone records which cover a period of months.

---

[3] The United States submits this was the sale of three of the stolen firearms to Lori Shelton, who is the Aunt of defendant Andrew Shelton.

Turner will further testify about a conversation he heard between Walker and defendant Moody in which Walker told Moody to bring some guns by the music studio because Walker had a buyer.

### c. Sale/Transfer of Firearms by Frederick Lewis

Marcel Turner will further testify that a short time after the theft of the firearms he provided codefendant Lewis with a ride to a location where Lewis took one of the stolen firearms to an unknown individual. Turner will describe that he witnessed Lewis exit the vehicle with the stolen Ruger firearm and return a few minutes later without it. Turner will testify that he asked Lewis what he did with the firearm and Lewis stated he dropped the firearm off with someone.

**The Proposed Evidence is Direct Evidence of the Crime Charged.**

"[D]irect evidence of a crime is almost always admissible against a defendant." *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010); *see also United States v. Adams*, 628 F.3d 407, 414 (7th Cir. 2010) (explaining that Rule 404(b) does not prohibit the introduction of evidence directly pertaining to the defendant's role in a charged conspiracy); *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) ("Rule 404(b) is inapplicable where the 'bad acts' alleged are really direct evidence of an essential part of the crime charged.") (internal quotation omitted). Direct evidence is still subject to evaluation under Fed. R. Evid. 403. *United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011).

The proposed evidence regarding the sales of the firearms in the days after the theft is direct evidence of the defendants' participation in the theft of the firearms

and their possession of the stolen firearms. The evidence of these three defendants selling the stolen firearms to other individuals in a time period so soon after the theft bears directly on their involvement in the theft and subsequent possession of the stolen firearms. Additionally, the evidence also bears on the motive of the defendants to commit the theft, namely, to subsequently sell the stolen items and make money from the commission of the train theft. As such, the above-described testimony is admissible as direct evidence of the crimes charged.

> **2. Defendant Edwards' Facebook Postings are Admissible as Direct Evidence of Crime Charged.[4]**

The United States seeks to introduce two Facebook postings from Defendant Edwards' Facebook account which further establish his guilt of the charged crimes. First, in a Facebook post dated April 7, 2015, one week before the charged train theft, defendant Edwards posted a photograph of two pairs of bolt cutters with the caption, "Give me a pair cutters, a ski mask, & a coupla down ass Niggas & watch me pull a fleaflicker and watch my cheese get BIGGER." (Attached as Ex. A).

This posting by Edwards just one week before the charged train theft is direct evidence that the defendant committed the charged theft in this case. First, a pair of nearly-identical, if not identical, bolt cutters was recovered from the crime scene in this case and will be introduced at trial. Second, the posting is direct evidence of the intent of the defendant to commit the crime, as well as evidence of his knowledge of how the crime is committed.

---

[4] For the reasons stated below, the United States believes this evidence is direct evidence of the charged crimes. To the extent the Court finds otherwise, the United States provides notice under FRE 404(b) that it intends to introduce this evidence as other crimes evidence for non-propensity purposes.

7

Additionally, the United States seeks to introduce a second Facebook posting by Defendant Edwards that was posted on April 13, 2015, the day after the theft. The posting depicts multiple pairs of women's' Calvin Klein sandals for sale. (Attached as Ex. B.). The United States anticipates testimony from the three cooperating defendants at trial (Peebles, Lipscomb, and Turner) that on the night of the train theft, in addition to stealing the charged firearms, the defendants also stole a shipment of Calvin Klein shoes. The Facebook post by Edwards the day after the theft offering Calvin Klein shoes for sale is the shoes is direct evidence of his involvement in the train theft the night before.

3. **Testimony Regarding The 33 Recovered Stolen Firearms in the Chicagoland Area Is Admissible as Direct Evidence of the Crime Charged.[5]**

At trial, the United States anticipates introducing evidence establishing that to date, 33 of the stolen Ruger firearms have been recovered in the Chicagoland area.[6] The United States submits that such evidence is direct evidence proving that the theft of the firearms did in fact occur in Chicago as charged, on the date charged in the indictment. As this Court will hear at trial, the theft of the firearms at issue was not discovered by the railyard until the shipment arrived at its final destination in Spokane, Washington. It was the original recoveries of the firearms at locations in Chicago that focused law enforcement's investigation in Chicago. To date, all

---

[5] For the reasons stated below, the United States believes this evidence is direct evidence of the charged crimes. To the extent the Court finds otherwise, the United States provides notice under FRE 404(b) that it intends to introduce this evidence as other crimes evidence for non-propensity purposes
[6] If additional recoveries occur prior to trial, the United States will seek to introduce those recoveries as well.

8

recoveries by law enforcement of the stolen Ruger firearms have occurred in the Chicagoland area.

The United States will call the recovering officers to testify about the recovery of the firearms, as well as the dates of the recovery. The United States will not introduce any facts regarding the surrounding details of who the firearm was recovered from or the details of the alleged crime the firearm was used in.[7] However, the fact that there have been 33 of the stolen firearms recovered all in the Chicago area is probative of the charged crime of cargo theft here in Chicago, as well as the defendant's possession of the stolen firearms.

### 4. Demario Shelton's Testimony Regarding Andrew Shelton's Storing of Firearms At Residence Theft Is Admissible as Direct Evidence of the Crime Charged.[8]

At trial, the United States anticipates calling Demario Shelton as a witness. Demario Shelton testified before the grand jury that the firearm recovered from his room belonged to his cousin, defendant Andrew Shelton. Demario Shelton will further testify that on two occasions prior to June 9, 2015, when law enforcement executed a search warrant at Demario Shelton's residence and recovered the firearm listed in Count Four of the Indictment, defendant Andrew Shelton dropped that same firearm off with Demario Shelton at the same location for him to hold.

---

[7] The United States would be willing to proceed by stipulation that to date 33 of the stolen firearms have been recovered in the Chicagoland area.
[8] As stated above, the United States does not believe this testimony is considered FRE 404(b) evidence. However, out of an abundance of caution, the United States provides notice under FRE 404(b) that it plans to introduce this testimony about the prior storage of the charged firearm at Demario Shelton's residence at trial.

The United States anticipates eliciting this testimony regarding Andrew Shelton's continued use of Demario Shelton's residence to store his firearm as direct evidence of the defendant's possession of that firearm on June 9, 2015, when it was recovered by law enforcement. Defendant Shelton is charged with possessing that firearm on June 9, 2015. The evidence of his possession of the same firearm, on multiple prior occasions at the same residence, establishes the defendant's ability to use that residence as a place he controls and has access to and a place he knowingly stores his firearms. Moreover, it is direct evidence of his constructive possession of the same firearm on June 9, 2015, when it is recovered by law enforcement.

## II. Introduction of Evidence Pursuant to Federal Rule of Evidence 404(b).

The United States seeks to introduce the evidence described below pursuant to Federal Rule of Evidence 404(b). For the reasons stated below, the United States submits the evidence is admissible for the non-propensity purposes detailed below.

### a. Applicable Law

"Rule 404(b) excludes relevant evidence of other crimes, wrongs, or acts if the purpose is to show a person's propensity to behave in a certain way, but other-act evidence may be admitted for 'another purpose' including, but not limited to, 'proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014) (en banc) (citing Fed.R.Evid. 404(b)). First, the evidence of the other-act must be offered for a purpose other than showing a person's character or action in conformity with character. *Id.* at 860. Exclusion is not required merely because some

propensity inference can be drawn from the other-act evidence; rather, the other-act evidence is admissible provided that the other-act evidence's relevance to "another purpose" is established by "some propensity-free chain of reasoning." *Id.* at 856, 860 ("[The other-act evidence's] relevance to 'another purpose' must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case.").

Then, the evidence must satisfy the Rule 403 balancing test. *Id.* The Court should admit the evidence at issue under Rule 404(b) because it is being offered for a non-propensity purpose and its probative value outweighs any danger of unfair prejudice under Rule 403. *See United States v. Gometz*, 879 F.2d 256, 260 (7th Cir. 1989); *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir. 1984). The Seventh Circuit has repeatedly instructed that, under Rule 404(b), evidence of other bad acts is admissible so long as the evidence is not introduced to show the defendant's bad character. *United States v. Conner*, 583 F.3d 1011, 1021-22 (7th Cir. 2009) (prior drug sales admissible to show intent); *United States v. Edwards*, 581 F.3d 604, 609 (7th Cir. 2009) (prior drug sales admissible to show possession); *United States v. Cox*, 577 F.3d 833, 838-39 (7th Cir. 2009) (credit card fraud used to rent hotel rooms admissible to show defendant could pay for prostitution parties and to rebut defense that defendant was not wealthy); *United States v. Ellis*, 548 F.3d 539, 544 (7th Cir. 2008) (prior tax violations admissible to show willfulness and to rebut forgetfulness defense).

In explaining the scope of Rule 404(b), the Seventh Circuit has emphasized that Rule 404(b)'s purpose "is simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person . . . . No other use of prior crimes or other bad acts is forbidden by the rule, and the draftsmen did not try to list every possible other use." *United States v. Taylor*, 522 F.3d 731, 735-36 (7th Cir. 2008). Thus, Rule 404(b) permits evidence of other crimes to be introduced not only for the explicitly-listed purposes, but also for any other relevant purpose, such as "the need to avoid confusing the jury." *Id.* at 736

1. **Evidence Relating to Terry Walker's Crew's Prior Course of Dealings With Defendant Nathan Driggers Is Admissible Under FRE 404(b) as Evidence of Defendant Driggers' Knowledge and Intent to Purchase the Stolen Firearms and To Provide Necessary Context for The Jury.**

The United States anticipates cooperating defendant Marcel Turner will testify at trial that within hours of the train theft, he and defendants Walker and Lewis sold approximately 30 of the stolen firearms to defendant Driggers. As part of that testimony, Turner would explain that Driggers often purchased items the crew stole from the trains and would typically pay 50% of the retail value after looking up the value on his cell phone.

This evidence is probative to showing that Defendant Driggers knew the firearms he was purchasing from the men were stolen, as well as explaining to the jury why the men brought their 30 stolen firearms to Driggers' "store." Additionally, during the execution of the search warrant at defendant Driggers' store, law enforcement discovered what appeared to be numerous stolen items, and confirmed

that at least one television inside the store was stolen from another railroad shipment prior to Driggers' possession of the television. Once again, such evidence is probative of proving Driggers' knowledge that the firearms he purchased were stolen, as well as giving the jury the necessary context to Defendant Turner's testimony as to why they brought the stolen merchandise to Driggers' store.

Any prejudice to defendant could be cured by a limiting instruction to the jury directing them not to consider the evidence for any purpose other than the knowledge and intent of Driggers to purchase stolen firearms thereby minimizing any prejudicial impact resulting from the admission of such evidence. *Gomez*, 763 F.3d at 860. *See also United States v. Souffront*, 338 F.3d 809, 834-35 (7th Cir. 2003); *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993) (juries are presumed to follow limiting instructions); *see also United States v. Long*, 86 F.3d 81, 86 (7th Cir. 1996) ("limiting instruction mitigates the prejudicial impact of Rule 404(b) evidence"); *United States v. Curry*, 79 F.3d 1489, 1497 (7th Cir. 1996).

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court the admission of evidence as set forth herein.

    Respectfully submitted,

    ZACHARY T. FARDON
    United States Attorney

By:    s/ *Christopher V. Parente*
    CHRISTOPHER V. PARENTE
    Assistant United States Attorneys
    219 South Dearborn St., 5th Floor
    Chicago, Illinois 60604