# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 15 CR 350 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATHAN DRIGGERS | ) | |
| | ) | Judge John J. Tharp |
| | ) | |
| Defendant | ) | |

### DRIGGERS REPLY TO GOVERNMENTS RESPONSE TO DRIGGER'S OBJECTIONS TO SANTIAGO PROFFER AND MOTION FOR SEVERANCE

A.     SANTIAGO PROFFER

The government states that Drigger's objection to the Santiago Proffer is "misplaced because the government is not seeking to admit any statements of other defendants against defendant." Govt's Response, R. 256, p. 1. It repeats this statement as a heading on page two of its response. R. 256, p. 3. This was certainly not the government's position in either of its Santiago Proffers. In any event, the government is not seeking to admit any of the testimony of the three cooperator/witnesses, except for Turner's testimony regarding the alleged sale of 30 guns to Driggers.

B.     TURNER'S TESTIMONY

1. Defendant did not object to Turner's testimony of conversations in Driggers' presence .

2. The government is also offering Turner's testimony of his conversation with Walker regarding "lining up a purchaser for the guns and telling Turner to come to Walker's house." According to the government this testimony "would be in furtherance of the conspiracy between

1

Walker and Turner and thus admissible against Walker under Fed. R. Evid. 801 (d)(2)(E)." R. 256, p. 3, note 1. In other words, this testimony is not offered against Driggers.

JOINDER

The government argues 'the sale of the recently stolen firearms to Driggers is directly linked to the series of acts or transactions that form the basis for the charges against the other defendants i.e., the scheme to rob the train and subsequent efforts to find buyers for the stolen firearms." R. 256, p. 5. Note the government's choice of words, "scheme to rob the train" and "subsequent efforts to find buyers for the stolen firearms." There may have been a scheme to steal the guns, but that is where the scheme ended. Per the Santiago Proffer, "the eight coconspirators" divided-up the guns and went their separate ways. The "eight coconspirators" did not include Driggers.

The Santiago Proffers also spells out the individual effort of some of the thieves after the theft, but there is no allegation of a joint effort. It was everybody for himself. Walker called [Peoples] … and asked if he (Walker) had sold all his guns." R. 246, p. 6. "Moody called and asked if Peoples knew someone interested in buying more guns." R. 246, p. 6. The government made no effort to rebut the arguments in Driggers motion that the sales "efforts" were individual not part of any joint action. Indeed, Edwards alone is marketing the Calvin Klein shoes stolen from the same train. Per the Santiago Proffer the theft was a joint effort. "In addition to stealing the firearms, the men also stole a shipment of women's Calvin Klein shoes." R, p. 1. Obviously, according to the government, the scheme was to steal from the train, but Edwards marketing efforts were not part of any joint activity. The joint activity ended with the division of the spoils.

All of the above rings loud that Driggers' possession was not part of "the same act or transaction or in the same series of acts or transactions" as required by Rule 8 (b).  Although the government cited three cases, it did not address the cases cited in Driggers' motion which spelled out the meaning of the words in Rule 8(b), "the usual meaning is acts or transactions that are ***pursuant to a common plan***."  United States v. Valasquez, 772 F2d 1348, 1385 (7th Cir. 1985) (italics added).  "The usual meaning is acts or transactions that are part of "***a single conspiracy***."  United States v. Diaz, 876 F2d 1344, 1356 (7th Cir. 1989) (italics added).  The government also ignores the fact that the issue of "joinder" is from the perspective of the indictment.  United States v Trodosijevic,  161 F3d 479, 484-485 (7th Cir. 1998).   The government has choosen  to ignore the words in the indictment.  Count 3 charges joint activity.  Counts 8 and 9 charge only Driggers.

The cases cited by the government are not persuasive.  In United States v. Warner, 498 F3d 666, 699 (7th Cir. 2007), the defendants were charged together in two conspiracies, which the Seventh Circuit found to be overlapping, hardly similar to this case where the indictment does not charge Driggers with any joint activity.  In United States v. Marzano, 160 F3d 399, 401 (7th Cir. 1998), another case cited by the government, the defendants were charged with being coconspirators, again hardly comparable to the allegations in Counts 8 and 9 of this indictment.  In United States v. Carter, 695 F3d 690, 700 (7th Cir. 2012) the government took a phrase from the court's opinion that joinder is permissible to "promote judicial efficiency" and to "allow the ''total' story to be presented to a single jury."  G. Resp. p. 4.  While that is hornbook law, well known to this Court, what are the facts?  The indictment in Carter charged the defendants, Carter and Willis, with carjacking, use of a firearm in the carjacking and felon in possession of a gun.  The defendant argued that joinder was improper and that the court was

3

wrong not to grant a severance. The Seventh Circuit easily dispatched that argument. "The felon in possession counts alleged that Willis and Carter … possessed the same Ruger pistol as that used to commit the carjacking." The facts in Carter were different from those in this case. Joinder in Carter was proper. Joinder in this case was improper.

SEVERANCE

Here the government takes full advantage of its large brief bank regarding severance, quoting a plethora of cases where reviewing courts have refused to endorse patently insufficient severance claims. The government did not address the argument made in Driggers' brief regarding the anticipated facts in its two Santiago Proffers and most recently in its 404(b) motion. Driggers did not argue that he had a better chance of success in a separate trial, nor was his argument based on spillover of prejudice, which there will be. Both are straw men inserted in the government's argument to be easily rebutted. Driggers knowing possession has nothing to do with the theft. His possession is wholly independent from the theft.

In a joint trial, the government must prove that each defendant participated in the theft. In a trial with only Driggers, it need only prove that the guns were stolen. The difference in the quantum of evidence and the trial time needed to prove the former, is substantially more than is needed to prove the latter. As far as Driggers is concerned, the government's proof as to the theft is compelling. If Driggers is tried alone, whether there is a single railroad witness who is not cross-examined, or a stipulation, Driggers will not contest the theft of the guns. Any argument relying on judicial efficiency is not compelling. A trial of Driggers alone will take no more than three days. This is another argument the government conveniently skipped in its response. On a more practical level is the fact that Edwards has new counsel who will not be prepared to try the case on April 17, 2017.

The government argues that the jury is entitled hear the "circumstances of the train theft to demonstrate that the firearms were in fact stolen." G Resp. p. 7. In other words, if Driggers is tried separately, the jury would be entitled to hear the three cooperator witnesses testify as that testimony is outlined in the two Santiago Proffers. That is nonsense. In support of its argument, the government cited United States v. Old Chief, 519 U. S. 172, 186-187 (1997) that "the prosecution is entitled to prove its case by the evidence of its own choice." The Supreme Court also said, this is "true as a general matter." Old Chief at 187. The government argued that it may offer such proof "to tell a story of guiltiness." But this evidence does not tell a story of Driggers' guiltiness. More appropriate and to the point is what the Court said earlier. Citing Rule 403 of the Rules of Evidence, it stated that a court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, … or needlessly presenting cumulative evidence," it stated:

> "That reading would leave the party offering the evidence with the option to structure a trial in whatever way would produce the maximum unfair prejudice consistent with relevance. He could choose the available alternative carrying the greatest threat of improper influence, despite the availability of less prejudicial but equally probative evidence. … This would be a strange rule. It would be very odd to confer such a degree of autonomy on the party subject to temptation, and the Rules of Evidence are not so odd."

Old Chief at 183.

Next, the government argues that instructions can blunt any prejudice, citing pattern jury instruction 4.06. R. 256, p. 7. Of course, it cites a few of the many cases in which

reviewing courts have dismissed severance arguments and affirmed convictions. Driggers motion is not addressed to a reviewing court, where the actual trial is a fait accompli.

Respectfully submitted,

s/   Michael B. Nash
**MICHAEL B. NASH**

**MICHAEL B. NASH**
53 West Jackson Suite 618
Chicago, Illinois 60604
(312) 236-8788
WILLIAM P. MURPHY
53 West Jackson Suite 1615
*Attorneys for Defendant*
NATHAN DRIGGERS

CERTIFICATE OF SERVICE

I certify that I have served a copy of this pleading on opposing counsel by the court's electronic filing system.

_____s_____

Michael B. Nash